**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

|  |  |
|---|---|
| **TRISTAN TANNER, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**-v-**<br><br>**STRYKER CORPORATION,**<br><br>**Defendant.** | **Case No.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Tristan Tanner ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), brings this Class Action Complaint ("Complaint") against Defendant Stryker Corporation ("Stryker" or "Defendant") and alleges, upon personal knowledge as to Plaintiff's own actions and upon information and belief and Plaintiff's counsel's investigation as to all other matters, as follows:

**NATURE OF THE ACTION**

1. With this action, Plaintiff seeks to hold Defendant responsible for the harms it caused Plaintiff and approximately one million other similarly situated persons in the preventable data breach of Defendant's inadequately protected computer network systems ("Systems").

2. Defendant is "a global leader in medical technologies" and offers "innovative products and services in MedSurg, Neurotechnology and Orthopedics."

3. As such, Defendant stores a litany of highly sensitive personal identifiable information ("PII") about its current and former employees. But Defendant lost control over that

data when cybercriminals infiltrated its insufficiently protected computers Systems in a data breach (the "Data Breach").

4.      It is unknown for precisely how long the cybercriminals had access to Defendant's network before the breach was discovered. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its Systems—thereby allowing cybercriminals unrestricted access to its current and former employees' PII.

5.      On information and belief, cybercriminals were able to breach Defendant's Systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII. In short, Defendant's failures placed the Class's PII in a vulnerable position—rendering them easy targets for cybercriminals.

6.      Plaintiff is a Data Breach victim, and he brings this class action on behalf of himself, and all others harmed by Defendant's misconduct.

7.      As a part of its operations, Defendant collects, maintains, and stores employees and prospective employees' highly sensitive personally identifiable information or PII, including financial information.

8.      This class action seeks to redress Defendant's unlawful, willful, and wanton failure to protect and secure the PII it collected from Plaintiff and Class Members.

9.      As a result of Defendant's woefully inadequate data security measures—including its failure to utilize basic encryption for sensitive data, its failure to adequately train its employees as its "Human Firewall," and its use of a single sign-on system—the PII of approximately 1 million customer accounts was exposed and stolen in the avoidable Data Breach.

10.     By collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII (sometimes referred to herein as "Private Information" or "Personal Information") from unauthorized disclosure.

11.     Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and secure from unauthorized access, and to make only authorized disclosures of their information.

12.     Due to Defendant's negligence, Plaintiff's and Class Members' PII is now in the hands of cybercriminals, who can further use their information to commit multiple forms of fraud and identity theft, wreaking havoc on the personal lives of nearly a million individuals.

13.     Upon information and  belief, the hacker has already posted the PII stolen in the Data Breach to the dark web, where it can be further exploited for criminal purposes.

14.     For the rest of their lives, Plaintiff and Class Members will therefore face a risk of fraud and identity theft at the hands of criminals who seek to misuse their PII.

15.     Plaintiff and Class Members have already and will continue to spend time responding to the Data Breach and are at an immediate, imminent, and heightened risk of all manner of fraud and identity theft as a direct and proximate result of the Data Breach. Plaintiff and Class Members have incurred and will continue to incur damages in the form of, among other things, identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, deprivation of the value of their PII, loss of privacy, and additional damages as described below.

16.     Stryker's harmful conduct has injured Plaintiff and Class Members in multiple ways, including: (i) invasion of privacy and theft of PII; (ii) the lost or diminished value of their

3

PII; (iii) costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and other unauthorized use of their data; (iv) lost opportunity costs to mitigate the Data Breach's consequences, including lost time; (v) lost benefit of their bargain; (vi) emotional distress associated with the loss of control over their highly sensitive Private Information; and (vii) substantial and ongoing risk that their Private Information will be misused, including through identity theft and financial fraud.

17.     Plaintiff brings this action individually and on behalf of the Class, seeking remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, disgorgement, injunctive and declaratory relief, reasonable attorneys' fees and costs, and all other remedies this Court deems proper.

## PARTIES

18.     Plaintiff Tristan Tanner is a citizen and resident of Connecticut, where Plaintiff intends to remain.

19.     Defendant Stryker Corporation is a for-profit corporation incorporated in Michigan and with its principle place of business at 1941 Stryker Way, Portage, MI 49002.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of Class Members is over 100, and at least one Class Member, including Plaintiff, is a citizen of a state that is diverse from Defendant's citizenship. Defendant is a citizen of Michigan and Plaintiff is a citizen of Connecticut. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

21.     This Court has personal jurisdiction over Defendant because Defendant conduct business in this District, maintain principal places of business in this District, have sufficient minimum contacts with this State, and further, because a substantial part of the events or omissions giving rise to the claims alleged in this Action also occurred in this District.

22.     Venue is proper as to Defendant in this District under 28 U.S.C. § 1391(a)(1) because Defendant maintain principal places of business in this District and therefore reside in this District pursuant to 28 U.S.C. § 1391(c)(2). Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged in this action also occurred in this District.

## FACTUAL ALLEGATIONS

23.     Plaintiff and Class Members are and/or were applicants and/or employed through Defendant. Plaintiff and Class Members directly or indirectly entrusted Defendant with their PII.

24.     Plaintiff and Class Members value their privacy and have taken reasonable steps to maintain the confidentiality of their PII.

25.     Plaintiff and Class Members reasonably expected that Defendant would keep their sensitive Private Information confidential and securely maintained, use their information for necessary purposes only, and make only authorized disclosures of their information.

26.     By obtaining, collecting, and storing Plaintiff's and Class Members' Private Information, Defendant assumed equitable and legal duties to protect Plaintiff's and Class Members' PII from involuntary disclosure to third parties.

27.     Despite Defendant's duties to protect Plaintiff's and Class Members' Private Information, Defendant failed to implement reasonable and industry-standard data protections to secure Plaintiff's and Class Members' information from unauthorized access and disclosure and

allowed hackers to breach its network and Systems and obtain Plaintiff's and Class Members' PII stored therein.

28.    At an undisclosed date in 2026, Defendant became aware of the March 11, 2026 Data Breach and theft of Plaintiff's and Class Members' Private Information.

29.    Defendant has not disclosed to Plaintiff and Class Members how or when Defendant learned of the Data Breach and PII theft, the ransom, or subsequent posting of their PII on the dark web.

30.    The PII exfiltrated in the Data Breach includes applicants' and employee's names, Social Security numbers, addresses, phone numbers, emails, dates of birth, employment history, and bank account information.

31.    Defendant has failed to provide timely notice of the Data Breach to Plaintiff and Class Members regarding the scope, nature, and potential consequences of the Data Breach.

32.    The hackers behind the cyberattack on Defendant were successful in exfiltrating sensitive Private Information from Defendant's data network and leaked the data that they obtained online.

33.    Upon information and belief, the Data Breach is a direct result of Defendant's failure to implement reasonable and industry-standard data protections to secure Plaintiff's and Class Members' Personal Information.

34.    Plaintiff is a former employee of Defendant. Plaintiff first started working with Defendant on or around March 2019.

35.    Pursuant to this relationship, Defendant required that Plaintiff disclose a wide variety of Private Information, including Plaintiff's name, Social Security number, address, phone number, email, date of birth, employment history, and bank information.

36.     In doing so, Plaintiff trusted that Defendant would use reasonable measures to protect Plaintiff's Private Information according to Defendant's data security policies, as well as State and Federal law.

37.     Plaintiff would not have allowed Defendant to maintain Plaintiff's Private Information if Plaintiff believed Defendant would fail to implement reasonable and industry standard practices to safeguard the Private Information from unauthorized access and exfiltration.

38.     Defendant obtained and continue to maintain Plaintiff's Private Information and have a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

39.     Plaintiff is very careful about the privacy and security of Plaintiff's Private Information—and Plaintiff protects Plaintiff's Private Information by, *inter alia*, keeping sensitive documents in a safe location and changing online passwords frequently.

40.     Plaintiff suffered an invasion of privacy when Plaintiff's Private Information was exposed and then stolen by the extortionist hackers, as a result of the Data Breach.

41.     Upon information and belief, the hackers already leaked the Private Information of Plaintiff and Class Members on the dark web.

42.     Plaintiff has spent—and will continue to spend—significant time and effort monitoring Plaintiff's accounts to protect Plaintiff from identity theft and other harms.

43.     As a result of the Data Breach, Plaintiff has lost time attempting to mitigate the fallout of the Data Breach by implementing security precautions. This is valuable time that Plaintiff would have spent on other activities, including but not limited to work and/or recreation.

44. Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information when it was stolen by the hackers. Private Information is a form of intangible property—property that Defendant was required to adequately protect.

45. As an employee of Defendant, Plaintiff suffered actual injury and lost the benefit of the bargain because Plaintiff provided his Private Information to Defendant with the reasonable and mutual expectation that Defendant would implement and maintain reasonable data security practices—but Defendant cut corners and did not provide the bargained for data security. If Defendant was transparent about its deficient data security, Plaintiff would not have entrusted Defendant with his PII.

46. Because of the Data Breach, Plaintiff suffers from the imminent and impending injury of the substantially increased risk of misuse, fraud, and identity theft.

47. Defendant deprived Plaintiff of the earliest opportunity to guard against the Data Breach's harmful effects by failing to notify Plaintiff about it.

48. Plaintiff has a continuing interest in ensuring that his Private Information—which, on information and belief, is still within the custody or control of Defendant—is protected and safeguarded from additional breaches or cybersecurity risks.

49. As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after Plaintiff's PII was compromised in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring Plaintiff's accounts and credit reports for fraudulent activity and researching the Data Breach; (b) loss of privacy due to Plaintiff's Private Information being accessed and stolen by cybercriminals; (c) theft of Private Information; (d) loss of the benefit of the bargain because Defendant did not adequately protect Plaintiff's Private Information; (e) emotional distress because identity thieves now possess Plaintiff's Private

Information; (f) imminent injury arising from the increased risk of fraud and identity theft now that Plaintiff's Private Information has been stolen and published on the dark web, where it remains unencrypted and available for unauthorized third parties to access and abuse, remains backed up in Defendant's possession, and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information it collects and stores; (g) diminution in the value of Plaintiff's Private Information, a form of intangible property that Defendant obtained from Plaintiff; and (h) other economic and non-economic harm.

50.     As a condition of being employed by Defendant, Plaintiff and Class Members were required to entrust their sensitive and Private Information to Defendant.

51.     Defendant retains and stores this Personal Information and derives a substantial economic benefit from the Private Information they collect. But for the collection of Plaintiff's and Class Members' PII, Defendant would be unable to perform its services.

52.     By collecting and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

53.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and maintained securely, to use their information for business purposes only, and to make only authorized disclosures of their information.

54.     Defendant could have prevented the Data Breach by properly securing and encrypting the files and servers containing the Private Information of Plaintiff and Class Members, and training its employees against social engineering hacking.

9

55.     Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by Defendant's awareness of the importance of protecting and securing sensitive data as a blockchain lender and by the delayed and inadequate notice.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a Nationwide Class as follows: All individuals in the United States whose Private Information was compromised in the Data Breach ("Class").

57.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

58.     Plaintiff reserves the right to amend the definitions of the Class or add a subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

59.     Class certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis utilizing the same evidence as would be used to prove those elements in separate actions alleging the same claims.

60.     **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. Although the precise number of individuals is currently unknown to Plaintiff and exclusively in the possession of Defendant, upon information and belief, approximately one million individuals were impacted.

10

61.     **Commonality:**  Common questions of law and fact exist as to all members of the

Class and predominate over any questions affecting solely individual members of the Class.

Among the questions of law and fact common to the Class that predominate over questions which

may affect individual Class members, including the following:

     a.  Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

     b.  Whether Defendant had duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

     c.  Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;

     d.  Whether Defendant was negligent in collecting and storing Plaintiff's and Class members' Private Information, and breached its duties thereby;

     e.  When Defendant actually learned of the Data Breach;

     f.  Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

     g.  Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

     h.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

     i.  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

     j.  Whether Defendant were unjustly enriched;

k.  Whether Defendant's conduct violated the statutes as set forth herein;

l.  Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct; and

m.  Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief  or restitution to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

62.    **Typicality:** Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffer from the same violations of the law as each other member of the Class.

63.    **Predominance and Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly, and Plaintiff's challenges of these policies hinge on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

64.    **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflict of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

65.     **Superiority and Manageability:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

66.     The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff is exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

67.     The litigation of the claims brought herein is manageable. Defendant's uniform misconduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class

13

Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

68.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Plaintiff and Class Members, may continue to refuse to provide proper notification to Plaintiff and Class Members regarding the Data Breach, and may continue to act unlawfully as set forth in this Complaint.

69.    **Injunctive Relief:** Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Federal Rule of Civil Procedure 23(b)(2).

70.    Class certification under Federal Rule of Civil Procedure 23(c)(4) is also appropriate because this Court can designate specific claims or issues or class-wide treatment and may designate multiple subclasses. Particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendant failed to timely notify the Plaintiff and the Class of the Data Breach;

b. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

c. Whether Defendant's security measures to protect its data Systems were reasonable in light of best practices recommended by data security experts;

d. Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

e. Whether Defendant failed to take commercially reasonable steps to safeguard consumer Private Information; and

f. Whether adherence to Federal Trade Commission ("FTC") data security recommendations and measures recommended by data security experts would have reasonably prevented the Data Breach.

71. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

72. Plaintiff realleges and incorporates by reference all preceding factual allegations, as if fully set forth herein.

73. Defendant owes a duty under common law to Plaintiff and the Class to exercise reasonable care in safeguarding, securing, and protecting the highly sensitive and confidential data they solicit, collect, store, and maintain. This includes a duty to exercise reasonable care in safeguarding, securing, and protecting Plaintiff's and Class Members' Private Information.

74. Defendant owes a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, and other requirements discussed herein, to ensure that its Systems, and the personnel responsible for them and that use them, adequately secure and protect the Private Information that Defendant solicit, collect, store, and maintain.

75. Defendant's duty to use reasonable data security measures includes, among other things: (a) designing, maintaining, and testing its security protocols to ensure that the Private

Information of Plaintiff and Class Members is adequately secured and protected; (b) removing or deleting sensitive data when no longer needed for authorized purposes; and (c) implementing and maintaining procedures to detect and prevent improper access to and misuse of Plaintiff's and Class Members' Private Information.

76. Defendant owes a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the Federal Trade Commission Act ("FTC Act") and other requirements, and to ensure that its Systems and networks, and the personnel responsible for them, adequately protect individuals' Private Information.

77. By soliciting, accepting, storing, and maintaining Plaintiff's and Class Members' Private Information, Defendant undertook a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

78. Stryker solicits, collects, stores, and maintains the Private Information of Plaintiff and Class Members as part of its regular business practices as a home equity lender.

79. Stryker required Plaintiff and Class Members to entrust it with their Private Information in order to obtain and maintain an employee account. Stryker requires its employees, including Plaintiff and Class Members, to submit PII in the ordinary course of providing its employer services.

80. Stryker gathered and stored the PII of Plaintiff and Class Members as part of its business of soliciting its services to its employees, which solicitations and services affect commerce.

16

81.    Plaintiff and Class Members entrusted Stryker with their PII with the reasonable and mutual understanding that Stryker would safeguard their information.

82.    Stryker had full knowledge of the sensitivity of the Private Information it collected and stored and the types of harm that Plaintiff and Class Members could and would suffer if their Private Information were wrongfully disclosed.

83.    By voluntarily undertaking and assuming the responsibility to collect and store Plaintiff's and Class Members' PII, and in fact doing so, Stryker had a duty of care to use reasonable means to secure and safeguard its Systems—and Plaintiff's and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft.

84.    Stryker's duty included a responsibility to implement processes by which it could detect a breach of its security Systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

85.    Stryker had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

86.    Stryker owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements, and to ensure that its Systems and networks adequately protected the Private Information it collected and stored.

87.    Stryker's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants on the one hand and Plaintiff and Class

Members on the other. That special relationship arose because Plaintiff and the Class entrusted Stryker with their PII, a necessary part of being applicants and employees of Defendant.

88.    Stryker's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described herein, but also because Stryker is bound by industry standards to protect PII.

89.    Stryker was subject to an "independent duty," untethered to any contract between Stryker and Plaintiff or the Class.

90.    Stryker also had a duty to exercise appropriate clearinghouse practices to remove former employees' and applicants' PII that it was no longer required to retain pursuant to regulations.

91.    Moreover, Stryker had a duty to promptly and adequately notify Plaintiff and the Class of the Data Breach.

92.    Stryker had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Stryker's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

93.    Stryker breached its duties, pursuant to the FTC Act and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' PII. The specific negligent acts and omissions committed by Defendant includes, but are not limited to, the following:

   a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

18

b.  Failing to adequately monitor the security of its networks and Systems;

c.  Allowing unauthorized access to Plaintiff's and Class Members' Private Information;

d.  Failing to detect in a timely manner that Plaintiff's and Class Members' Private Information had been compromised;

e.  Failing to remove former employees' and applicants' Private Information after it was no longer required to retain it pursuant to regulations; and

f.  Failing to timely and adequately notify Plaintiff and Class Members about the Data Breach's occurrence and scope, so they could take appropriate steps to mitigate the potential for identity theft and other damages.

94.  Stryker violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards.

95.  Plaintiff and Class Members were within the class of persons the FTC Act was intended to protect and the type of harm that resulted from the Data Breach was the type of harm that the statute was intended to guard against.

96.  Stryker's violation of Section 5 of the FTC Act constitutes negligence.

97.  The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

98.  A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Stryker's inadequate security practices.

19

99.    It was foreseeable that Stryker's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury. Further, the Data Breach was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

100.    Stryker had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed.

101.    Plaintiff and the Class were the foreseeable and probable victims of inadequate data security practices and procedures. Stryker knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of providing adequate security for that PII, and the necessity of encrypting PII stored on its Systems or transmitted through third party systems.

102.    It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' PII would result in one or more types of injuries to Plaintiff and Class Members.

103.    Plaintiff and the Class had no ability to protect their PII that was in, and upon information and belief, remains in, Stryker's possession.

104.    Stryker was in the best position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

105.    Stryker's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard PII.

106. Stryker has admitted that the PII of Plaintiff and the Class was wrongfully stolen and disclosed to unauthorized third persons as a result of the Data Breach.

107. But for Stryker's wrongful and negligent breach of duties owed to Plaintiff and the Class, the PII of Plaintiff and the Class would not have been compromised and stolen in the Data Breach.

108. There is a close causal connection between Stryker's failure to implement adequate data security measures to protect the PII of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The PII of Plaintiff and the Class was lost and accessed as the proximate result of Stryker's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate data security measures.

109. As a direct and proximate result of Stryker's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) nominal damages; and (vii) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Stryker's possession and is subject to further unauthorized disclosures so long as Stryker fails to undertake appropriate and adequate measures to protect the PII.

110. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

111. Plaintiff and Class Members are also entitled to injunctive relief requiring Stryker to: (i) strengthen its data security Systems and monitoring procedures; (ii) submit to future annual

21

audits of those Systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT II
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

112. Plaintiff realleges and incorporates by reference all preceding factual allegations, as if fully set forth herein.

113. When Plaintiff and Class Members provided consideration and PII to Stryker, they entered into implied contracts with Stryker, pursuant to which Stryker agreed to implement and maintain reasonable data security practices to adequately secure and protect the PII it collected and stored.

114. Defendant solicited and invited Plaintiff and Class Members to entrust them with their PII, which they were required to provide in order to obtain and maintain a loan account.

115. Plaintiff and Class Members provided their PII to Defendant with the reasonable and mutual expectation that Defendant would implement and maintain reasonable and adequate data security practices to protect their PII from unauthorized access. Defendant knew or reasonably should have known that Plaintiff and Class Members held this belief and expectation.

116. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Stryker's data security practices complied with relevant laws and regulations (including FTC guidelines on data security) and were consistent with industry standards.

117. Defendant impliedly promised to implement and maintain reasonable and adequate data security practices to protect Plaintiff's and Class Members' PII from unauthorized access.

118. By accepting Plaintiff's and Class Members' PII, Defendant implicitly represented that its data security practices were sufficient to protect and secure the PII collected and stored.

119. Defendant's conduct in requiring applicants and employees, including Plaintiff and Class Members, to provide their PII illustrates Defendant's intent to be bound by an implied promise to implement and maintain reasonable data security practices sufficient to protect and secure the PII Stryker collected and stored.

120. Implicit in the agreement between Stryker and Plaintiff and Class Members, was Stryker's obligation to: (a) use the Private Information it collected and stored for business purposes only; (b) take reasonable steps to safeguard that Private Information; (c) prevent unauthorized disclosures of the PII; (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information; (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure; and (f) retain the PII it collected and stored only under conditions that kept such information secure and confidential.

121. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Stryker, on the other, is demonstrated by their conduct and course of dealing.

122. Plaintiff and Class Members would not have provided their PII to Defendant in the absence of Stryker's implied promise to implement and maintain reasonable data security practices.

123. Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendant. They provided their PII to Defendant in exchange for Stryker's consideration of their loan applications, loans, and lending accounts and Stryker's implied promise to adopt reasonable data security safeguards.

124. Stryker breached its implied contracts with Plaintiff and Class Members by failing to implement and maintain reasonable data security practices.

125. Stryker breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their PII, by failing to delete the Private Information of the Class from its network once the relationship ended, and by failing to provide accurate and timely notice to Plaintiff and Class Members that their Private Information was compromised and stolen as a result of the Data Breach.

126. As a result of Stryker's misconduct, Plaintiff and Class Members have suffered, and continue to suffer, legally cognizable damages arising from the Data Breach.

127. As a direct and proximate result of Stryker's breach of its implied contracts, Plaintiff and Class members sustained damages, including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of their bargain; (vi) nominal damages; and (vii) the continued and certainly increased risk to their PII.

128. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

129. Plaintiff and Class Members are also entitled to injunctive relief requiring Stryker to: (i) strengthen its data security Systems and monitoring procedures; (ii) submit to future annual audits of those Systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

130.    Plaintiff realleges and incorporates by reference all preceding factual allegations, as if fully set forth herein.

131.    Plaintiff brings this Count in the alternative to the breach of implied contract count above.

132.    Plaintiff and Class Members conferred a benefit on Stryker by providing their PII to Defendant. In exchange, Plaintiff and Class Members should have received from Stryker the services that were the subject of their transactions and should have had their Private Information protected with adequate data security.

133.    Stryker knew that Plaintiff and Class Members conferred a benefit upon it and accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Stryker profited from its collection of Plaintiff's and Class Members' data and used Plaintiff's and Class Members' PII for business purposes.

134.    Stryker failed to secure Plaintiff's and Class Members' PII and, therefore, did not fully compensate Plaintiff and Class Members for the value that their PII provided.

135.    Stryker acquired Plaintiff's and Class Members' Private Information through inequitable means because it failed to investigate and/or disclose the inadequate data security practices previously alleged.

136.    If Plaintiff and Class Members had known that Stryker would not implement and maintain adequate data security practices to monitor, supervise, and secure their Private Information, they would not have entrusted their Private Information to Stryker.

137.    Plaintiff and Class Members have no adequate remedy at law.

138.    Stryker enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII. Instead of providing a

reasonable level of data security that would have prevented the Data Breach or mitigated its effects, Stryker instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Stryker's decision to prioritize its own profits over the requisite security and the safety of their PII.

139.    Under the circumstances, it would be unjust for Stryker to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

140.    As a direct and proximate result of Stryker's misconduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of their bargain; (vi) nominal damages; and (vii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Stryker's possession and is subject to further unauthorized disclosures so long as Stryker fails to undertake appropriate and adequate measures to protect their Private Information.

141.    Plaintiff and Class Members are entitled to damages from Stryker and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Stryker from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek compensation.

142.    Plaintiff and Class Members may not have an adequate remedy at law against Stryker, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT IV**
**DECLARATORY JUDGEMENT**
**(On Behalf of Plaintiff and the Class)**

143.   Plaintiff realleges and incorporates by reference all preceding factual allegations, as if fully set forth herein.

144.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

145.   An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and whether Stryker is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII.

146.   Plaintiff alleges that Stryker's data security measures remain inadequate.

147.   Furthermore, Plaintiff continues to suffer injury as a result of the compromise of Plaintiff's PII and remains at imminent risk that further compromises of Plaintiff's PII will occur in the future.

148.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

   a.   Stryker owes a legal duty to secure the PII of its current and/or former users of its loan services and to timely notify impacted individuals of a data breach under common law and various state and federal statutes; and

   b.   Stryker continues to breach this legal duty by failing to employ reasonable measures to secure the PII in its possession.

149. This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate data security protocols consistent with law and industry standards to protect PII in Stryker's Systems.

150. If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Stryker. The risk of another such breach is real, immediate, and substantial. If another breach at Stryker occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and Plaintiff will be forced to bring multiple lawsuits to rectify the same conduct.

151. The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Stryker if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Stryker of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Stryker has a pre-existing legal obligation to employ such measures.

152. Issuance of the requested injunction will not disserve the public interest. In contrast, such an injunction would benefit the public by preventing another data breach at Stryker, thus eliminating the additional injuries that would result to Plaintiff and current and/or former employees and applicants of Stryker whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests that this Court:

A. Certify this case as a class action pursuant to Federal Rule of Civil Procedure 23;

B.      Order appropriate compensatory, statutory, punitive, and nominal damages to Plaintiff and Class Members under applicable law;

C.      Order appropriate injunctive, equitable, and declaratory relief under applicable law;

D.      Award Plaintiff and the Class pre-judgement and/or post-judgment interest as prescribed by law;

E.      Award reasonable attorneys' fees and costs as permitted by law; and

F.      Enter other and further relief as the Court deems to be both just and fair.

<u>**JURY TRIAL DEMANDED**</u>

Plaintiff hereby demands a trial by jury for any and all issues in this action so triable as of right.

Dated: March 31, 2026

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Gregory A. Mitchell (P68723)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
T: (248) 841-2200
epm@millerlawpc.com
gam@millerlawpc.com

Dan Gustafson (*admission forthcoming*)
David Goodwin (*admission forthcoming*)
Frances Mahoney-Mosedale (*admission forthcoming*)
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: 612-333-8844
dgoodwin@gustafsongluek.com
dgustafson@gustafsongluek.com
fmahoneymosedale@gustafsongluek.com

-and-

29

James F. Woods (*admission forthcoming*)
Annie E. Causey (*admission forthcoming*)
**WOODS LONERGAN PLLC**
60 East 42nd Street, Suite 1410
New York, New York 10165
Tel: 212.684.2500
jwoods@woodslaw.com
acausey@woodslaw.com

*Attorneys for Plaintiff and Putative Class*